UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 09-CV-5251 (JFB)(AKT)
_____

ANTHONY M. CLAUDIO,

Plaintiff,

VERSUS

MATTITUCK-CUTCHOGUE UNION FREE SCHOOL DISTRICT,

Defendant.

_____

**MEMORANDUM AND ORDER**
July 29, 2014
_____

JOSEPH F. BIANCO, District Judge:

This Memorandum and Opinion addresses the three remaining issues in the instant case: (1) Anthony M. Claudio's ("plaintiff" or "Claudio") motion for costs; (2) whether plaintiff's award for lost pension benefit contributions by the Matttituck-Cutchogue Union Free School District ("defendant" or "District") should be calculated at an amount that includes any automatic salary increases that would have occurred had plaintiff not been terminated unlawfully; and (3) whether, as part of his reinstatement award, plaintiff is entitled to be reinstated to his position at a salary that would have included any automatic salary increases that would have occurred had he not been terminated unlawfully.

I. BACKGROUND

A jury found that the District unlawfully terminated plaintiff's employment on the basis of plaintiff's age, in violation of the Age Discrimination in Employment Act ("ADEA"). The jury awarded $70,000.00 as back pay damages.

In two written opinions following the jury's verdict, this Court (1) denied the District's motions for judgment as a matter of law, Fed. R. Civ. P. 50(b), and for a new trial, Fed. R. Civ. P. 59; (2) ordered the District to reinstate plaintiff to a teaching position in the District; (3) awarded plaintiff front pay damages in the amount of $19,745.00; (4) ordered the District to make the contributions to plaintiff's pension plan that the District would have made had plaintiff continued to work full-time as a teacher from the date of his unlawful

termination until the date of the jury's verdict; and (5) awarded plaintiff $83,447.50 in attorneys' fees. *See Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09-CV-5251 (JFB) (AKT), 2014 WL 1514235 (E.D.N.Y. Apr. 16, 2014) ("*Claudio II*"); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 163 (E.D.N.Y. 2013) ("*Claudio I*"). In *Claudio II*, the Court reserved decision on plaintiff's motion for costs and directed plaintiff to submit additional documentation supporting his motion. The Court also ordered the parties to submit supplemental letters addressing whether plaintiff would have been entitled to any automatic salary increases had he not been terminated unlawfully, such that the automatic increases would have affected the amount of contributions to his pension.

Following *Claudio II*, plaintiff submitted supplemental documentation supporting his motion for costs on May 20, 2014. Defendant filed a letter opposing part of plaintiff's request on May 23, 2014. The Court held a telephone conference with the parties on June 9, 2014, during which plaintiff withdrew his request for all costs to which defendant had objected.

Defendant filed a letter regarding plaintiff's pension contributions on May 29, 2014. Plaintiff responded to that letter on May 30, 2014. The Court addressed these letters during the June 9, 2014 telephone conference. At this conference, it became clear to the Court that the issue of plaintiff's entitlement to automatic salary increases affected not only his pension benefits—which was a focus of *Claudio II*—but also the salary for his new teaching position. Accordingly, the Court directed the parties to submit additional letters concerning plaintiff's current salary. Defendant filed a letter with the Court on June 23, 2014. Plaintiff filed a letter in response on June 30, 2014, and defendant filed a letter in reply on June 30, 2014. The Court has fully considered the arguments of the parties.

II. DISCUSSION

A. Costs

As noted, plaintiff's revised motion for costs is uncontested. Plaintiff requests $350.00 for the filing fee, $720.00 for subpoena costs, and $3,090.00 for the cost of transcripts. The Court concludes that this request is reasonable and adequately documented. Accordingly, on consent of defendant, the Court awards plaintiff a total of $4,160.00 in costs. *See, e.g.*, *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (noting that "a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients'" (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998))).

B. Automatic Salary Increases

From the parties' recent submissions, it is clear that plaintiff would have been entitled to automatic, annual salary increases had he not been terminated unlawfully after the 2008-2009 academic year. Specifically, plaintiff was terminated at "Step 4" of the pay scale, and he would have received the following annual salary had he remained in defendant's employ beyond that time:

| *Academic Year* | *Step* | *Salary* |
|---|---|---|
| 2009-10 | 5 | $58,684.00 |
| 2010-11 | 6 | $63,023.00 |
| 2011-12 | 7 | $68,105.00 |
| 2012-13 | 8 | $73,445.00 |
| 2013-14 | 9 | $79,051.00 |

(*See* ECF No. 106, Def.'s Letter, June 23, 2014; ECF No. 107, Pl.'s Letter, June 30, 2014.)

### 1. Pension Benefits

As a threshold matter, once the Court determined that plaintiff was entitled to lost pension contributions as a form of equitable relief, defendant did not attempt to argue that it could ignore these automatic salary increases in calculating the contributions it would have made to plaintiff's pension plan had plaintiff continued to work full-time as a teacher from the date of his unlawful termination until the date of the jury's verdict. (*See* Telephone Conference, June 9, 2014 ("Defense Counsel: Now with respect to what was provided to the New York State Teachers' Retirement System, the District did provide the step increases that Mr. Claudio would have received had he remained employed the District, and with that was the corresponding salary increases. So his pension, through the New York State Teachers' Retirement System, is being calculated according to those step increases.").)

In any event, the Court independently concludes that the pension contributions must account for the automatic salary increases to which plaintiff would have been entitled, set forth *supra*, in order to make plaintiff whole. As the Second Circuit has explained,

> [W]e disagree with the trial judge's refusal to consider [plaintiff's] request for lost pension benefits on the ground that damages for lost pension benefits are one component of the overall damages suffered by a plaintiff, which a jury may assess in ADEA actions. Despite some case law that supports viewing lost pension rights as an aspect of damages, the better view is that these rights fall within the category of equitable relief. As distinguished from damage awards, which are payable to the plaintiff, pension benefits are paid into pension annuity funds. They merely replace the benefits that would have accrued during the year of employment wrongfully denied to [plaintiff]. Because a judge exercising his equitable power over a discrimination action should afford make-whole relief to wronged plaintiffs, we remand to the district court with directions to award pension rights to plaintiff for the 1976-77 year, to be paid into the Connecticut Teachers' Pension Fund.

*Geller v. Markham*, 635 F. 2d 1027, 1036 (2d Cir. 1980) (internal citations and quotation marks omitted); *see also Loeb v. Textron, Inc.*, 600 F.2d 1003, 1021 (1st Cir. 1979) ("An award of pension benefits is plainly authorized under the ADEA . . . . If a prevailing plaintiff is returned to the defendant's employment, this award will consist of payments to the pension fund on plaintiff's behalf, bringing plaintiff's pension interest to the level it would have reached absent discrimination."); *Aguinaga v. United Food & Commercial Workers Int'l Union*, 854 F. Supp. 757, 767 (D. Kan. 1994) ("When an employee is ordered reinstated, the court may add to the award the contributions the employer would have made to the pension fund. The award will consist of payments to the pension fund on the plaintiff's behalf to bring the plaintiff's pension interest up to the level it would have been absent the discrimination."), *aff'd as modified*, 58 F.3d 513 (10th Cir. 1995); *accord Soliday v. 7-Eleven, Inc.*, No. 09-CV-807-FtM-29SPC, 2011 WL 4949652, at \*3 (M.D. Fla. Oct. 17, 2011) (including, as

3

part of a front pay award under the ADEA, the employer's annual 401(K) matching contribution); *Equal Emp't Opportunity Comm'n v. Yellow Freight Sys., Inc.*, No. 98-CV-2270 (THK), 2002 WL 31011859, at *32 (S.D.N.Y. Sept. 9, 2002) (ordering defendant to make contributions to pension fund that it would have made had plaintiff worked full-time during the period for which back pay was awarded); *Townsend v. Wash. Metro. Area Transit Auth.*, 746 F. Supp. 178, 188 (D.D.C. 1990) ("Having established WMATA's liability for discrimination in 1984, the plaintiff is entitled to complete relief: (1) a promotion to TA-18 retroactive to June 11, 1984, and to the next CDS opening, with full back pay and all step increases and other accumulated benefits that she would have received . . . ."). The Court will require the parties to calculate the precise amount of defendant's contribution so that it can be included in the judgment.

However, defendant notes correctly that plaintiff must also make the contributions to his pension plan that he would have been required to make had he worked full time during that period. To the extent plaintiff argues otherwise, the Court disagrees. Without requiring plaintiff to pay his fair share, the Court would be placing plaintiff in a better position than he would have found himself absent age discrimination. *Cf. Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374–75 (2d Cir. 2000) (noting that awarding pension benefits is designed to make plaintiff whole). In this case, plaintiff was a "Tier 4" employee who had to contribute three percent of his salary for his first ten years of employment. Thus, plaintiff must contribute three percent of what his salary should have been in the 2009-10 and 2010-11 academic years. (*See* ECF No. 103, Def.'s Letter, May 29, 2014.) By the Court's calculation, plaintiff must therefore contribute $3,651.21 to his pension plan.[1] However, the Court will conduct a conference call to verify that the above-referenced amount is correct and to determine, prior to awarding the lost benefits, that plaintiff intends to make his required contribution to the pension plan.

2. Salary

Apart from the issue of the pension benefits, the parties dispute the salary owed to plaintiff in the position to which the plaintiff was reinstated. When the Court reinstated plaintiff to a teaching position in the District, the Court did not specify the salary plaintiff should receive. It now appears that the District is paying plaintiff $65,807.00 for the 2013-14 academic year, which corresponds to Step 5 on the 2013-14 Salary Schedule for someone like plaintiff who holds a Master's Degree and twenty to thirty credits. (*See* ECF No. 107, Pl.'s Letter, June 30, 2014.) Plaintiff contends that he should have received $79,051.00 for that year, which corresponds to Step 9 on the same salary schedule. (*Id.*) Critically, defendant does not dispute that plaintiff would have been paid at Step 9 had plaintiff worked for the District in between the time he was unlawfully terminated and the time of his reinstatement. (*See* ECF No. 106, Def.'s Letter, June 23, 2014.) However, defendant contends that plaintiff is not entitled to be paid at Step 9 now for two reasons: (1) such an award would be tantamount to an improper revision of the jury's back pay award; and (2) plaintiff has not earned the right to be paid at Step 9 because he did not actually work for the four years in between his unlawful termination and his reinstatement. (*See id.*; *see also* ECF No. 108, Def.'s Letter, June 30, 2014.)

---

[1] $.03 * (\$58{,}684.00 + \$63{,}023.00) = \$3{,}651.21$.

4

The Court rejects both of defendant's reasons for not paying plaintiff at Step 9. First, contrary to defendant's characterization of plaintiff's request, plaintiff is not seeking to increase the amount of back pay damages. Thus, he is not seeking any additional damages for lost salary during the years prior to the jury verdict because of automatic salary increases that would have increased his salary *in those prior years*. The jury already compensated him for salary in those years and, thus, any such argument for additional money lost (from deprivation of salary increases) in those prior years should have been made to the jury.

Instead, the dispute over whether plaintiff should be paid at Step 5 or Step 9 concerns plaintiff's *current* salary in the position to which the Court reinstated him. Moreover, plaintiff never waived his right to raise this argument, as defendant suggests. He has consistently sought the equitable remedy of reinstatement following the jury's verdict, and the amount of salary upon reinstatement is certainly an issue the Court can consider as part of its equitable remedy of reinstatement.

Numerous courts have concluded that the salary amount upon reinstatement is part of the equitable relief that the Court can include as part of the reinstatement, and that such rate of pay should include any automatic pay increases of which plaintiff was deprived because of the unlawful discrimination. *See, e.g.*, *Davis v. Rutgers Cas. Ins. Co.*, 964 F. Supp. 560, 577 n.11 (D.N.J. 1997) ("Salary of a reinstated Title VII plaintiff shall be at a rate of pay he would have earned but for the discriminatory termination, which has been calculated above based upon the assumptions noted regarding annual pay increases."); *Madden v. Cisneros*, 830 F. Supp. 1251, 1259 (E.D. Ark. 1993) ("The Court orders that the plaintiff shall be immediately reinstated to his former position with HUD, or one reasonably comparable, and shall have the pay designation of GS-13, along with whatever 'step' increases which would have accrued in the time since Madden left HUD's employment."); *Truskoski v. ESPN, Inc.*, 823 F. Supp. 1007, 1016 (D. Conn. 1993) ("Accordingly, defendant is ordered to reemploy plaintiff at a grade which would permit her salary to be fixed at $29,862, that being her salary at termination plus six increments for the employment anniversaries since April 1987."); *EEOC v. Eazor Exp. Co.*, 499 F. Supp. 1377, 1388 (W.D. Pa. 1980) ("Jackson is also entitled to reinstatement to a position commensurate with her skills, training and experience, at a rate of pay she would have been earning but for the discrimination, plus seniority which would have accrued from June 28, 1976, and benefits which flow therefrom."), *aff'd*, 659 F. 2d 1066 (3d Cir. 1981) (Table); *Stout v. Whiteaker*, 379 F. Supp. 218, 222 (M.D. Tenn. 1974) ("[I]t is ordered that plaintiff be reinstated as a teacher in the Putnam County School System and that he is entitled to recover as damages the salary with normal increases he would have earned had his employment not been terminated."); *Brown v. United States*, 377 F. Supp. 530, 540 (N.D. Tex. 1974) ("Plaintiff shall be reinstated to his former position with back pay including all rights, benefits and step increases that he would have been entitled to but for this removal."); *accord Reaves v. Marsh*, 658 F. Supp. 1268, 1278 (E.D. Ark. 1987) (granting relief in Title VII case that included grade step increases); *Hernandez v. Powell*, 424 F. Supp. 479, 481 (N.D. Tex. 1977) (same).

Defendant's reason for not paying plaintiff at Step 9 in his new position—that he did not actually work from 2009 to 2013—is untenable. Plaintiff did not work

for those four years *only because he was terminated unlawfully*. Accordingly, in order to make plaintiff whole, the Court must order that plaintiff now be paid the same salary he would have received had he never been terminated unlawfully. *See, e.g.*, *Losciale v. Port Auth. of N.Y., N.J.*, No. 97-CV-0704 (JGK), 1999 WL 587928, at *7 (S.D.N.Y. Aug. 4, 1999) ("The plaintiff shall be reinstated to his previous position with the salary and benefits that he would have obtained had he not been terminated."); *O'Quinn v. N.Y. Univ. Med. Ctr.*, 933 F. Supp. 341, 346 (S.D.N.Y. 1996) ("Accordingly, plaintiff is entitled to reinstatement to the position of Project Manager and to receive only the salary she would have received in February 1992 as a Project Manager, with any subsequent increases in salary and benefits she may be entitled to over time given the retroactive seniority the court deems her to possess."); *Brooks v. Fonda-Fultonville Cent. Sch. Dist.*, 938 F. Supp. 1094, 1110 (N.D.N.Y. 1996) ("Thus, the court orders the defendant to reinstate Brooks as of October 1, 1996 as a full-time permanent cleaner earning the salary and receiving the same benefits as she would have had she not been wrongfully terminated on May 3, 1991."); *Miller v. Swissre Holding, Inc.*, 771 F. Supp. 56, 62 (S.D.N.Y. 1991) ("SwissRe is hereby required to reinstate plaintiff to his former position, at a salary comparable to that which he would have achieved had he not been wrongfully terminated. The reinstatement salary level must reflect the incremental rates of increase he had received during his career at Swissre ($2,496 per year), plus merit increases of 5.5%, from the date of termination to the date of the judgment."). Indeed, it is difficult to square defendant's argument on the issue of salary with its concession that the District must account for automatic salary increases when calculating plaintiff's pension benefits. Taking into account automatic salary increases is necessary in both cases to make plaintiff whole.

In sum, as part of its reinstatement order, the Court orders the District to pay plaintiff a salary at Step 9 of the 2013-14 Salary Schedule ($79,051.00) for the 2013-14 academic year.[2] The District should increase plaintiff's pay accordingly as soon as practicable. Once the District increases plaintiff's salary, the District must also pay plaintiff the difference between the salary he has actually received up to that point and the Step 9 salary that he should have received from the date of reinstatement. The Court adds this amount to its initial award of front pay in order to make plaintiff whole.

---

[2] Of course, for each ensuing year, the District must base any future increases in plaintiff's salary on the fact that plaintiff was entitled to a salary at Step 9 for the 2013-14 academic year.

III. CONCLUSION

For the reasons set forth herein, the Court awards plaintiff $4,160.00 in costs. The Court also orders the District to pay plaintiff a salary at Step 9 of the 2013-14 Salary Schedule ($79,051.00) for the 2013-14 academic year. The District should increase plaintiff's pay accordingly as soon as practicable. Once the District increases plaintiff's salary, the District must also pay plaintiff the difference between the salary he has actually received up to that point and the Step 9 salary that he should have received from the date of reinstatement. The Court shall conduct a telephone conference to address any remaining issues regarding the pension benefits amount in light of the Court's ruling.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 29, 2014
      Central Islip, NY

\*    \*    \*

Plaintiff is represented by Frank J. Blangiardo, Frank J. Blangiardo, Esq., P.O. Box 1169, Cutchogue, NY 11935. Defendant is represented by Jeltje DeJong, Joshua S Shteierman, and Kelly E Wright, Devitt Spellman Barrett, LLP, 50 Route 111, Smithtown, NY 11787.